1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11  INTERNATIONAL BUSINESS MACHINES
    CORPORATION,
12                    Plaintiff,
13       v.
    JEFF S. SMITH,
14
                      Defendant.
15
16
17

No.  2:17-mc-00095 RSL

INTERNATIONAL BUSINESS MACHINES
CORPORATION'S MOTION TO ENFORCE
AND COMPEL COMPLIANCE WITH
SUBPOENA SERVED ON AMAZON WEB
SERVICES, INC.

Note on Motions Calendar: **August 15, 2017**

**ORAL ARGUMENT REQUESTED**

(Related to No.: 17-cv-5808-CS (S.D.N.Y.))

18
19
20
21
22
23
24
25
26
27
28

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - i

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

## I.   INTRODUCTION

Plaintiff International Business Machines Corporation ("IBM") submits this Motion to Enforce and Compel Compliance with the Subpoena directed to Amazon Web Services, Inc. ("AWS"). The documents sought from AWS are highly relevant to IBM's claims against its former Chief Information Officer, Defendant Jeff Smith, who recently commenced competitive employment with AWS. Indeed, the subject matter of the documents sought by IBM touch upon issues going to the heart of the showing IBM intends to make in support of its claims, and also serve to rebut the testimony Smith intends to offer as part of his efforts to oppose IBM's forthcoming preliminary injunction hearing in the United States District Court in and for the Southern District of New York, which is scheduled for August 21, 2017.

Nonetheless, after agreeing to accept service of the Subpoena issued from the Southern District of New York and raising no specific objection to any requests therein, AWS has refused to produce any documents responsive to two categories of reasonable requests. AWS has also failed to produce all of its communications with Smith, including highly relevant text messages between Smith and Andrew Jassy, the CEO of AWS and Smith's anticipated supervisor. IBM has conferred with AWS with respect to its lack of disclosure, but AWS has remained steadfast in its refusal to produce responsive documents. Earlier today, IBM presented the above dispute to a Magistrate Judge in the Southern District of New York, before whom AWS had previously appeared for the purpose of resolving discovery disputes in this action. AWS, however, has now taken the position that the Magistrate Judge lacks the power to compel AWS to comply with IBM's discovery requests. Accordingly, the Magistrate Judge directed IBM to seek relief in the above-entitled Court. Counsel for AWS has likewise invited IBM to submit the present dispute to this Court for resolution. Accordingly, this motion followed.

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 1

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

## II.   BACKGROUND

### A.   Background of the Dispute between IBM and Smith.[1]

From 2014 until May 5, 2017, Jeff Smith was a senior executive and Chief Information Officer of IBM. In that role, Smith was privy to highly confidential trade secrets, including some of IBM's most significant product development plans, and was a member of two committees of high-ranking IBM executives responsible for developing and implementing IBM's corporate strategies. Because his position exposed him to competitively sensitive information, Smith signed a noncompetition agreement barring him from working for an IBM competitor for twelve months after departing IBM.

While serving as one of IBM's senior executives and the company's Chief Information Officer, Smith corresponded by private (non-IBM) email and text message with Andrew Jassy, the CEO of one of IBM's biggest competitors, AWS. Smith ingratiated himself to Mr. Jassy, and Mr. Jassy, in turn, recruited Smith to leave IBM and work directly for him at AWS.

On May 5, 2017, Smith resigned from IBM, and on June 9, 2017, Smith, through counsel, informed IBM that he had accepted an offer of employment with AWS that would commence on August 7, 2017. IBM has since learned that Smith will be a Vice President and senior leader at AWS, and that he will report directly to Mr. Jassy.

### B.   Summary of Procedural Background.

On August 1, 2017, IBM commenced an action in the United States District Court in and for the Southern District of New York (Case No.: 7-17-cv-05808) to prevent Smith from joining AWS as Vice President and to enforce the non-competition and non-solicitation agreement between IBM and Smith for the terms of those agreements. IBM contemporaneously moved the

---

[1]  Details relating to the background of the parties' dispute can be found in the pleadings and other papers submitted in the United States District Court in and for the Southern District of New York (Case No. 7-17-cv-05808), true and correct copies of which (as publicly filed) are attached to the Declaration of Pietro J. Signoracci ("Signoracci Decl.") as Ex. A (Complaint; Docket No. 1), Ex. B (Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction; Docket No. 19), Ex. C (Declaration of Pietro J. Signoracci; Docket No. 20); Ex. D (Excerpts of Transcript of Hearing on Motion for Preliminary Injunction and Temporary Restraining Order; Docket No. 42-4); Ex. E (Order to Show Cause for an Order for a Preliminary Injunction and Temporary Restraining Order; Docket No. 4); Ex. F (Further Order Regarding Plaintiff's Motion for a Temporary Restraining Order; Docket No. 6); Ex. I (Letter Brief dated August 7, 2017; Docket No. 21); Ex. J (Letter Brief dated August 7, 2017; Docket No. 22); Ex. K (Letter Brief dated August 9, 2017; Docket No. 37); and Ex. O (Letter Brief dated August 14, 2017; Docket No. 42).

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 2

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

Court for a temporary restraining order to prevent Smith beginning his AWS employment on August 7, 2017, and to enjoin him from doing so until such time as the Court would entertain its request for more permanent relief through a preliminary injunction hearing.

After a hearing on August 1, 2017, Judge Cathy Seibel entered the requested temporary restraining order in favor of IBM (subject to limited carve-outs), scheduled the preliminary injunction hearing for August 21 and 24, 2017, and directed the parties to submit written testimony for any witness they intended to present, along with proposed findings of fact and conclusions of law, by August 14, 2017.[2] Notably, at the August 1 hearing, both parties and their counsel (including counsel for AWS, who also represents Smith) agreed to cooperate on expedited discovery in advance of the August 21 injunction hearing.[3]

In accord with the parties' agreement to cooperate in discovery, counsel for AWS agreed to accept service of a Subpoena, which was transmitted effective August 2, 2017.[4] The Subpoena provided that AWS was to produce certain specified documents to counsel for IBM on August 8, 2017, at 5:00 p.m.[5] In response to the subpoena, counsel for AWS indicated that AWS was prepared to cooperate and produce documents.[6]

On August 8, 2017, AWS produced a number of documents to IBM in response to the Subpoena. Unfortunately, and as detailed below, AWS has failed or refused to produce documents in response to certain categories of materials requested by IBM; specifically, Request No. 7 ("Documents sufficient to show the names of, and general subject matters discussed by, any and all committees, teams, and/or groups of AWS executives and/or employees Smith is expected to participate in, including any and all regular or specific meetings with Andrew Jassy.") and Request No. 9 ("All documents concerning competition with IBM").[7]

IBM raised its concerns with AWS's failure to respond to the subpoena by letter on

---

[2] *See* Signoracci Decl. at Ex. E and Ex. F.
[3] *See* Signoracci Decl. at ¶¶ 3-4.
[4] *See* Signoracci Decl. at ¶¶ 4-5 and Ex. G; *see also,* Signoracci Decl. at ¶ 6.
[5] *See* Signoracci Decl. at Ex. G.
[6] *See* Signoracci Decl. at ¶ 6 and Ex. H.
[7] *See* Signoracci Decl. at ¶¶ 9-11 and Ex. L.

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 3

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

August 10, 2017 and received no response, despite a request for a response the next day.[8] Counsel for IBM and AWS have met and conferred regarding the present discovery dispute, but have been unable to reach agreement on the matters presented herein.[9] Accordingly, IBM raised its concerns with AWS's failure to respond to the Subpoena during an August 11 teleconference with Magistrate Judge Davison.[10] The parties were directed to present their positions on the outstanding discovery matters in dispute through letter briefs, which were to be submitted on August 14. Counsel for IBM and Smith's separate counsel submitted their letter briefs earlier today.[11] Meanwhile, through an August 14, letter to counsel for IBM, counsel for Smith and AWS stated that any further disputes concerning the Subpoena or AWS's production of documents should be addressed in the Western District of Washington, where AWS is located.[12]

Earlier today, counsel for the parties appeared before Magistrate Judge Davison to address their respective concerns regarding discovery. Judge Davison directed IBM to submit its dispute regarding AWS's failure to properly respond to the Subpoena to the above-entitled Court.[13] Accordingly, IBM brought the present motion for consideration, and has arranged for notice to be provided to counsel for AWS and Smith with respect to the same.

### C. AWS Has Failed to Produce Documents Concerning Competition with IBM

IBM served the Subpoena on counsel for AWS on August 2, 2017.[14] Through the Subpoena, IBM asked AWS to produce "[a]ll documents concerning competition with IBM."[15] As noted, Defendant Smith's and AWS's counsel agreed to cooperate with respect to discovery. Nonetheless, AWS produced *no documents* responsive to this request, and instead have only asserted boilerplate objections.[16]

Here, documents reflecting AWS competition with IBM are critical to the core issues. At

---

[8] *See* Signoracci Decl. at ¶ 12-13 and Ex. M.
[9] *See* Signoracci Decl. at ¶¶ 14-15.
[10] *Id.*
[11] *See* Signoracci Decl. at ¶ 16 and Ex. O.
[12] *See* Signoracci Decl. at ¶ 17.
[13] *See* Signoracci Decl. at ¶ 18.
[14] *See* Signoracci Decl. at ¶¶ 4-5 and Ex. G; *see also,* Signoracci Decl. at ¶ 6 and Ex. H.
[15] *See* Signoracci Decl. at Ex. G at Request No. 9.
[16] *See* Signoracci Decl. at ¶¶ 9-11 and Ex. L; *see also,* Signoracci Decl. at ¶ 16 and Ex. O. With respect to AWS's one specific objection – regarding the place for production – IBM has been and remains prepared to receive AWS's production in Seattle, Washington (as requested in the [Proposed] Order submitted herewith).

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 4

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

the TRO hearing, Smith expressed the view that AWS and IBM are not in fact competitors. In response, Judge Seibel posted this question: "When we go to discovery in this case, they [IBM] are not going to find a single document in the possession of Amazon Web Services where anybody at Amazon Web Services talks about or wonders or expresses a concern or curiosity about what IBM is doing?"[17] Smith thus put at issue whether IBM and AWS are, in fact, competitors, and Judge Seibel appropriately recognized AWS's views of IBM's competitiveness as relevant to the parties' dispute, and would be a proper subject of pre-hearing discovery.

During the meet and confer between counsel, Smith and AWS did not articulate any meaningful reason why AWS should not produce responsive documents. Instead, Smith and AWS claimed that the request was burdensome. AWS's counsel was asked several times if they would be willing to negotiate the scope of this request in any way at all, and each time IBM's counsel was met with stonewalling. IBM's counsel also asked if Smith and AWS could identify a limited number of custodians or even a central repository with memoranda reflecting AWS's views of IBM as a competitor. Smith's and AWS's counsel were unwilling to engage in any discussion as to the scope of this request and declined to produce anything responsive to it.[18]

Smith and AWS also said AWS could not produce any documents responsive to this request because, in their view, it calls for disclosure of confidential AWS cloud computing strategy. Smith and AWS were advised that a Protective Order was already in place addressing any such concern.[19] Indeed, counsel for AWS participated in the negotiation of that Protective Order.[20]

### D. AWS Has Failed to Produce Documents Concerning the Names and Subject Matters of Executive Teams Smith Will Participate in at AWS

In its subpoena to AWS, IBM asked AWS to produce "[d]ocuments sufficient to show the names of, and general subject matters discussed by, any and all committees, teams, and/or groups of AWS executives and/or employees Smith is expected to participate in, including any and all regular or specific meetings with Andrew Jassy."[21] As with the preceding request, Smith and AWS did

---

[17] *See* Signoracci Decl. at Ex. D at 25:2-6.
[18] *See* Signoracci Decl. at ¶¶ 14-16 and Ex. O.
[19] *See* Signoracci Decl. at ¶¶ 14-16 and Ex. O; *see also,* Ex. N.
[20] *See* Signoracci Decl. at Ex. N.
[21] *See* Signoracci Decl. at Ex. G at Request No. 7.

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 5

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

not make specific objections to this request, but nonetheless produced nothing on this issue.[22]

The documents sought through this request are highly relevant to the parties' dispute. Smith represented at the TRO hearing that his role at AWS would be "very scoped . . . in a narrow area of cloud services" and would "keep[] him out of sales" and "keep[] him out of pricing."[23] These assertions are inconsistent with documents in the public record that describe the role of Vice Presidents at AWS as being involved in the direction of business strategy and participating in high-level decision making regarding AWS's business, as well as attending weekly meetings to discuss operating metrics and strategy.[24] IBM is entitled to test AWS's assertion to the Court that Smith's role will be a narrow one that will not involve his use of IBM trade secrets that Smith possesses, and IBM cannot do so unless it is permitted to gather evidence regarding Smith's anticipated role directly from AWS, his prospective employer.

During IBM's meet and confer with Smith's and AWS's counsel, it asked if AWS would be willing to produce any documents responsive to this request. Smith's and AWS's counsel did *not* appear to take the position that this request was burdensome or irrelevant. To date, though, IBM has received no documents responsive to this request.[25]

### E. AWS Has Failed to Produce Documents Concerning the AWS's Communications with Smith

In its subpoena to AWS, IBM asked AWS to produce "All documents concerning Smith, including, but not limited to all communications with Smith."[26] In response to a similar request from IBM to Smith, Smith produced a series of text messages between Smith and Mr. Jassy, but only from May 16, 2017 to July 31, 2017, even though IBM's document requests sought documents "created, generated or received after August 1, 2014 to the present." IBM asked Smith to supplement his production to include all text messages between Smith and Mr. Jassy, including text messages from August 1, 2014 to May 16, 2017 and messages from July 31, 2017 to the present. Smith indicated that such messages exist, but that he no longer has possession,

---

[22] *See* Signoracci Decl. at ¶¶ 9-11 and Ex. L; *see also* Signoracci Decl. at ¶ 16 and Ex. O.
[23] *See* Signoracci Decl. at Ex. D at 8:12-17.
[24] *See* Signoracci Decl. at Ex. A at ¶ 47 (citing Amazon.com, Inc.'s Motion for Temporary Restraining Order, *Amazon.com, Inc. v. Powers,* No. 2:12-CV-1911 (Docket No. 4), at Ex. A pp. 6-8).
[25] *See* Signoracci Decl. at ¶¶ 9-11 and Ex. L; *see also,* Signoracci Decl. at ¶ 16 and Ex. O.
[26] *See* Signoracci Decl. at Ex. G at Request No. 1; *see also, id.* at Request No. 12.

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 6

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

custody or control of them.[27]  IBM accordingly requests that AWS, as the only party with possession, custody, or control of text messages between Smith and Mr. Jassy (or others at AWS), produce all such messages from August 1, 2014 to the present.

## III.  ARGUMENT

### A.  The Documents Sought from AWS are Necessary for the Prosecution of IBM's Case Against Smith.

Civil litigants are entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  A discovery request need not call for evidence that would be admissible at trial, so long as the request "appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  These general discovery limitations apply with equal force to subpoenas to third parties.  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006).  Fed. R. Civ. P. 45(a)(1)(D) allows a party to issue a subpoena commanding an individual "to produce documents, electronically stored information, or tangible things" and to "require[] the responding person to permit inspection, copying, testing, or sampling of the materials."

As detailed above, the subject matter of the documents sought are directly relevant to a variety of matters at issue in the underlying litigation, including the nature and scope of any competition between AWS and IBM, the anticipated nature and scope of Smith's duties for AWS attendant to his serving the company as a senior leader and Vice President, and text messages between Smith and Mr. Jassy (or anyone else at AWS) since August 1, 2014, to the present. These issues relate to key aspects of IBM's case against Smith, including matters relating to whether and to what extent:  (1) IBM has a legitimate business interest in preventing Smith from engaging in his contested employment with AWS; (2) the limitations on Smith sought by IBM are reasonable under the circumstances; and (3) AWS has an intent and means of implementing controls to prevent Smith from breaching his ongoing obligations to IBM.

The need for the requested documents is underscored in light of Smith's professed intent to continue challenging the nature of the competition between IBM and AWS as part of his defense to the preliminary injunction, as well as the conflicting evidence regarding the nature

---

[27] *See* Signoracci Decl. at ¶¶ 10, 11, 13, and 18.

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 7

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

and scope of Smith's anticipated job duties. Moreover, this is evidence that is unique to AWS: its internal view and understanding of IBM as a competitor, its intended job description for Smith, and communications between AWS and Smith that Smith no longer has in his possession.

**B.  The Information Sought from AWS does not Present an Undue Burden and any Inconvenience is Wholly Outweighed by IBM's Legitimate Need for the Materials.**

Courts generally engage in a balancing of interests to determine whether or not to grant a motion to compel (or conversely, a motion to quash). The Court's evaluation of undue burden requires weighing the burden to the subpoenaed party against the value of information to the serving party. *See, e.g., Jackson v. AFSCME Local*, 196, 246 F.R.D. 410, 412 (D. Conn. 2007). Whether a subpoena imposes an "undue burden" depends on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* (citing *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).

As detailed above, the documents sought by IBM go *directly* to core matters at issue in this action and IBM has been willing to work with AWS on tailoring the disputed requests to address any purported concerns with burden. Further, a review of the circumstances at issue overwhelmingly demonstrate that the balance of interests tip in IBM's favor; to wit: (1) IBM has no other means of obtaining the requested documents, (2) matters relating to the nature and scope of competition between IBM and AWS are highly contested, and (3) there is conflicting evidence as to the nature and scope of Smith's expected duties. Under these circumstances, IBM should not be left to rely on the bare testimony of Smith and AWS.

Moreover, on the burden side, there has been no showing that the requested production would entail more than minimal effort on the part of AWS.[28] Further, as noted by counsel for Smith and AWS "[t]ime is of the essence given the August 21 Preliminary Injunction hearing."[29]

---

[28] Further, even if the subpoenaed materials were voluminous and compliance was difficult, that is not a sufficient reason to deny enforcement of the subpoena. *See United States v. Int'l Bus. Machines, Inc.*, 71 F.R.D. 88, 92 (S.D.N.Y. 1976) (concluding the contention that compliance with subpoena would cost tens of thousands of dollars and require three to six months was unpersuasive and did not require non-compliance with the subpoena); *N.L.R.B. v. Consol. Vacuum Corp.*, 395 F.2d 416 (2d Cir. 1968) (noting that a subpoena requesting documents pertaining to wage increases from 1964 to 1966 was not overly broad even though complaint alleged increases in 1996 only, as it was reasonable to make comparisons to earlier years).

[29] *See* Signoracci Decl. at Ex. K.

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 8

C.   **AWS's Contention that the Requested Disclosure Involves Production of its Confidential Information Does Not Support a Refusal to Enforce the Subpoena.**

AWS's attempt to avoid the subpoena on the bare grounds it seeks confidential information is unpersuasive.[30] "There is no absolute privilege for trade secrets and similar confidential information . . . Rather, the courts weigh the claim to privacy against the need for disclosure, and commonly enter a protective order restricting disclosure." *Festus & Helen Stacy Found., Inc. v. Merrill Lynch*, 432 F. Supp. 2d 1375, 1380 (N.D. Ga. 2006) (citing *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979)).[31] Likewise, avoidance of a subpoena cannot be justified simply because the target is a competitor.[32] Rather, a party seeking to avoid production "must show, with specificity, that disclosure will work a clearly defined and serious injury."[33]

Here, AWS has failed to provide any specific evidence of serious harm to its business that would justify avoidance of the subpoena.[34] Moreover, even if AWS had made a sufficient showing, IBM has shown a substantial need for the requested material.[35]

---

[30] A nonparty seeking to avoid a subpoena on grounds that it requires the disclosure of "a trade secret or other confidential research, development, or commercial information," must demonstrate that the requested information is a trade secret or confidential commercial information and demonstrate that its disclosure would be harmful. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 686 (N.D. Cal. 2006); *Cash Today of Texas, Inc. v. Greenberg*, No. 02-MC-77-GMS, 2002 U.S. Dist. LEXIS 20694, at *8 (D. Del. Oct. 23, 2002). Once the nonparty makes this showing, the burden shifts to the requesting party to establish a "substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Gonzales,* 234 F.R.D. at 686. Then, the Court must balance the need for the information with the harm that would be caused if disclosure is ordered. *Cash Today*, 2002 U.S. Dist. LEXIS 20694, at *8.

[31] *See also Nelson v. Farm, Inc*., No. 07-2210-JWL-DJW, 2007 U.S. Dist. LEXIS 94705, at *9 (D. Kan. Dec. 27, 2007) ("A movant may not rely on the confidential nature of documents as a basis for quashing a request to produce them inasmuch as '[c]onfidentiality does not equate to privilege.'"); *Gomez v. J.R. Hycee Conyeor Co., Inc.*, No CV 06-2827, 2008 U.S. Dist. Lexis 570, at *3 (E.D.N.Y. Jan. 4, 2008) (denying motion to quash, where the information was highly relevant to the issues in the case and the protective order adequately addressed the non-party's confidentiality concerns); *Syposs v. U.S.*, 181 F.R.D. 224, 229 (W.D.N.Y. 1998) (denying motion to quash subpoena, despite claim that calls to patients constituted confidential commercial information, where the records contained relevant information).

[32] *See, e.g., Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 426 (1st Cir. 1961) ("[c]oncededly it is burdensome to give testimony and to furnish documents relating to private or business matters, and the more if the information sought redounds to the advantage of a legal or commercial opponent. But this is not 'oppression' within the meaning of the rules."); s*ee also In re Rogatory*, 144 F.R.D. 272, 276 (E.D. Pa. 1992) ("The mere fact that documents discuss trade secrets does not make them per se undiscoverable").

[33] *See Composition Roofers Union Local 30 Welfare Tr. Fund v. Graveley Roofing Enters*., 160 F.R.D. 70, 72 (E.D. Pa. 1995) (citing *Musicom Int'l, Inc. v. Serubo*, 1994 U.S. Dist. LEXIS 10826, No. CIV.A.94-1920, 1994 WL 410818, at * 2 (E.D. Pa. Aug. 5, 1994)).

[34] By way of example, in *Horizons Titanium Corporation*, 290 F.2d 421, the First Circuit vacated an order to quash, and noted it could not accept an affidavit of the general counsel, speaking for the president of the defendant, which provided "that the documents subpoenaed relate to trade secrets, secret processes, developments, research, and inventions of [defendant] which are confidential and . . . have never been publicly disclosed" as "[that] would be altogether too facile a way for a witness to avoid testifying." *Id.* at 422, 425 (internal marks omitted). Here, AWS

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 9

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

Further, with regard to the purported burden associated with the production of confidential information to a competitor, counsel for AWS specifically negotiated terms in the Protective Order entered in the underlying action in order to permit AWS to produce documents under confidentiality designations that would prevent disclosure of such documents to IBM. In other words, there is no reasonable risk of improper disclosure (a concept that was espoused by counsel for AWS in its Letter Brief to the Southern District of New York Court).[36]

In sum, there is a significant need for the requested materials, AWS has been provided with adequate controls against improper use and disclosure, and a denial of IBM's ability to obtain these materials would materially impair its ability to prosecute this action.

## IV.  CONCLUSION

IBM respectfully requests that the Court compel AWS to produce the requested materials, so that IBM can obtain the information and documents that are necessary for the prosecution of its action against Smith—including the upcoming hearing on its Motion for Preliminary Injunction, set for August 21, 2017.

DATED this 14th day of August, 2017.

JACKSON LEWIS P.C.

 */s/ Peter H. Nohle*
Peter H. Nohle, WSBA #35849
520 Pike Street, Suite 2300
Seattle, WA  98101
Telephone:  206-405-0404
peter.nohle@jacksonlewis.com
Attorneys for International Business Machines Corporation

---

has done little more than contend that the requested documents are confidential and would potentially place AWS at a competitive disadvantage if disclosed to IBM.  This assertion is not sufficient to justify denial of IBM's subpoena.

[35] For example, courts have recognized that, "'[s]ensitive' pricing and rate structure information, for that matter, arguably may lead to discoverable evidence showing that the defendants unlawfully misappropriated [plaintiff's] pricing and rate structure information to formulate [defendant's]. [Plaintiff], it must be remembered, does not need to show much to fit its requests under the 'any possibility' discovery standard." *Wachovia Ins. Servs. v. Paddison*, No. 406CV083, 2006 U.S. Dist. LEXIS 66463, at *65 (D. Ga. July 18, 2006); *see also Gonzales*, 234 F.R.D. at 685-686 (concluding plaintiff demonstrated a substantial need for some information relating to Google's search index and query log); *Fanjoy v. Calico Brands, Inc.*, No. 2:06-mc-469, 2006 U.S. Dist. LEXIS 55158, at *11 (D. Utah Aug. 7, 2006) (concluding in part that the need for confidential information outweighed any harm).

[36] *See* Signoracci Decl. at Ex. K ("Providing Mr. Golden access to the supposedly confidential documents pursuant to a non-disclosure agreement poses no risk to IBM, and the Court should allow Mr. Golden access to the documents in question.").

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 10

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404

# DECLARATION OF SERVICE

The undersigned declares under penalty of perjury under the laws of the State of Washington that on this day, I e-mailed a true and accurate copy of the document to which this declaration is affixed to the Clerk of the Court at newcases.seattle@wawd.uscourts.gov for filing of a miscellaneous action. I also sent a copy to the following:

**Counsel for Defendant Jeff F. Smith**
Ronald Richman:  ronald.richman@srz.com
Max Garfield:  max.garfield.@srz.com

**Counsel for Amazon Web Services, Inc.**
Michael Banks:  michael.banks@morganlewis.com
Richard Rosenblatt:  richard.rosenblatt@morganlewis.com
Sarah Bouchard:  sarah.bouchard@morganlewis.com
Brandon Brigham:  brandon.brigham@morganlewis.com

Dated this 14th day of August, 2017, at Seattle, Washington.

_[signature]_

IBM'S MOTION TO ENFORCE &
COMPEL COMPLIANCE WITH SUBPOENA
SERVED ON AMAZON WEB SERVICES - 11

**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, Washington 98101
(206) 405-0404